# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 15, 2020

## STATE OF TENNESSEE v. BOBBY WAYNE CENTERS

**Appeal from the Criminal Court for White County**
**No. CR-8077       Wesley Thomas Bray, Judge**
_____

### No. M2019-02285-CCA-R3-CD
_____

The Appellant, Bobby Wayne Centers, was convicted by a jury in the White County Criminal Court of the sale of 26 grams or more of methamphetamine, the delivery of 26 grams or more of methamphetamine, the possession of 26 grams or more of methamphetamine with the intent to sell; and the possession of 26 grams or more of methamphetamine with the intent to deliver. The trial court merged the sale of methamphetamine conviction and the possession with intent to sell methamphetamine conviction into a single conviction and merged the delivery of methamphetamine conviction and the possession with intent to deliver methamphetamine conviction into a single conviction. The trial court imposed concurrent sentences of eighteen years as a Range II, multiple offender with release eligibility after service of thirty-five percent of the sentence in confinement. On appeal, the Appellant contends that the trial court erred by allowing Agent Eaton to narrate the video of the drug transaction. Upon review, we conclude that the case must be remanded to the trial court for the correction of the judgments to reflect the merger of all of the convictions into the sale of methamphetamine conviction. The judgments of the trial court are affirmed in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed as Modified; Case Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined. THOMAS T. WOODALL, J., not participating.

Cindy Morgan (at trial) and Michael J. Rocco (on appeal), Sparta, Tennessee, for the Appellant, Bobby Wayne Centers.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Mark Gore, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## I. Factual Background

The Appellant was initially charged in an indictment with one count of the sale of 26 grams or more of methamphetamine and one count of the delivery of 26 grams or more of methamphetamine based upon a drug purchase by a confidential informant (CI) working for the TBI on November 9, 2015. Thereafter, the Appellant was also charged in a superceding indictment with one count of the possession of 26 grams or more of methamphetamine with the intent to sell and one count of the possession of 26 grams or more of methamphetamine with the intent to deliver.

At trial, Harold Eaton testified that he was a special agent with the drug unit of the Tennessee Bureau of Investigation (TBI). Agent Eaton said that on November 9, 2015, he, Agent Rebekah Waterston, and Agent Billy Miller met a CI at a predetermined location in Putnam County. The CI was working with the TBI to make a controlled purchase of methamphetamine from the Appellant. The CI was hoping for "consideration" in the form of a lighter sentence after he was caught selling "eight balls" of methamphetamine. Agent Eaton said that methamphetamine was a schedule II controlled substance and that in 2015, the cost of an "eight ball" or 3.5 grams was approximately $200 to $275. The cost of one ounce was approximately $1,000 to $1,400.

Agent Eaton said that the agents searched the CI and his vehicle for contraband but found none. Agent Eaton gave Agent Waterston a "little keyfob" that was an audio/video recording device and a small digital recorder that recorded only audio. Agent Eaton also photocopied $2,000 in bills and gave the money to the CI to purchase two ounces of methamphetamine. Agent Waterston, who was working undercover, got into the CI's vehicle, and they drove to an address on Brushwood Road in the Bon Air Mountain area of White County. Agents Eaton and Miller followed them in separate, unmarked vehicles.

Agent Eaton said that Agent Waterston and the CI went to a residence on Brushwood Road. Agents Eaton and Miller parked a short distance down the road. Agent Eaton said that it was foggy and that he did not see the CI enter the residence. The transaction lasted approximately ten minutes. Thereafter, the agents and the CI returned to the predetermined location. The CI gave the drugs and recording devices to Agent Eaton. The agents searched the CI and his vehicle and found no contraband or money.

Agent Eaton returned to his office and secured the evidence. He weighed the substance and determined that the weight was 2.2 ounces. Agent Eaton sent the substance to the TBI's crime laboratory for testing.

Agent Eaton said that he downloaded the information from the recording devices onto a computer and made a DVD of the recording. He said the recording showed a sale of methamphetamine from the Appellant to the CI. Agent Eaton said that he was able to produce still frame photographs from the DVD recording. Agent Eaton was shown one of the photographs, which was entered as exhibit 7. The photograph was taken from an upward angle and showed the face of a man with a ceiling and a ceiling fan in the background. Agent Eaton identified the person shown in the photograph as the Appellant. Agent Eaton explained that he knew the Appellant because he had "dealt with him before." Agent Eaton estimated that the original video was fifteen or twenty minutes long and that the photograph of the Appellant was taken from around the middle of the video. He explained that he video was redacted before it was shown to the jury.

Agent Eaton said a photograph marked as exhibit 8 "[l]ook[ed] like" the Appellant's hands placing a "rather large quantity" of methamphetamine on something, possibly a set of digital scales, which was on a table. Agent Eaton surmised that the Appellant was weighing the methamphetamine. The methamphetamine was in a "freezer bag" or a "food saver bag" in the photograph and was the same kind of bag as the methamphetamine the CI gave to the agents. Agent Eaton said a photograph marked as exhibit 9 showed the Appellant holding in his left hand a bag containing a substance Agent Eaton believed to be methamphetamine. Agent Eaton said that the photograph was taken from approximately the middle of the video. The State then played the DVD for the jury. As the video was shown, the State noted "a depiction of a female in the vehicle" and asked Agent Eaton to identify the female. Agent Eaton responded that Agent Waterston was the female shown on the video. Agent Eaton said that the day of the controlled buy was the first time he had been to the residence. However, he and Agent Miller drove by the residence a few weeks before trial, and they saw the Appellant at the residence.

On cross-examination, Agent Eaton said that the CI arranged the purchase of methamphetamine from the Appellant and that it was the only time the TBI used the CI. Agent Eaton acknowledged that the CI named the Appellant as someone from whom he could purchase methamphetamine. The CI said that the Appellant lived in the Appellant's girlfriend's residence on Bon Air Mountain.

Agent Eaton acknowledged that he did not personally see the Appellant inside the residence on the day of the purchase. He identified the Appellant in the video and also recognized the Appellant's voice, which Agent Eaton described as a "little graveley [sic]" and "distinctive." Agent Eaton explained that he had "dealt with" the Appellant six or seven years before the transaction.

Agent Eaton acknowledged that the police did not search the residence to try to recover the money used to purchase the drugs. Agent Eaton conceded that he did not know whether the CI had gone to the Appellant's residence earlier that day and left the

- 3 -

methamphetamine at the residence. Agent Eaton said that he had planned to arrange additional purchases with the CI. However, the CI returned to Texas, and the TBI was unable to arrange any other purchases.

On redirect examination, Agent Eaton said that he had no evidence the methamphetamine came from the CI. Instead, he stated, "My video shows where it came from, it came from [the Appellant]."

Rebekah Waterston Cloud[1] testified that she was a special agent with the drug unit of the TBI. At Agent Eaton's request, on November 9, 2015, she operated undercover to accompany a CI during a controlled purchase of methamphetamine. Before the purchase, the CI met with the agents at a predetermined location. The agents searched the CI and his vehicle to determine that he did not have any money, weapons, or drugs. Agent Eaton provided the CI with $2,000 in "confidential funds" to purchase the drugs. The agents equipped the CI with an audio recording device and a video recorder, which was "a keyfob type recorder."

Agent Waterston said that she and the CI left the location and drove to the Appellant's residence on Brushwood Road. Agent Waterston said that when they arrived in the driveway of the Appellant's residence, she noticed a light-colored truck. She was on the telephone with Agent Eaton and told him the license plate number of the truck. The CI got out of the vehicle, and Agent Waterston stayed in the car and watched as he approached the front door. Agent Waterston explained that her role was to watch anything taking place outside of the residence and ensure that no one else entered the residence during the transaction. The CI knocked on the door and after "several minutes," someone answered the door. Agent Waterston did not see who came to the door. Agent Waterston watched the CI enter the residence and estimated that he was inside the residence for "several minutes." When the CI returned to the vehicle, he gave Agent Waterston a clear cellophane bag that appeared to contain approximately two ounces of methamphetamine. The CI said that he had bought it from the Appellant.

Agent Waterston said that she and the CI returned to the prearranged location and met with Agent Eaton. At that time, Agent Waterston gave Agent Eaton the methamphetamine.

On cross-examination, Agent Waterston said that she had no personal knowledge that the residence was the Appellant's but that Agent Eaton had told her the residence "was in [the Appellant's] girlfriend's name" and that the Appellant lived there. Agent Waterston said that she had never met the Appellant before the transaction and that she did not meet

---

[1] At the time of trial, the witness's name was Rebekah Cloud. However, because her name at the time of the offense was Rebekah Waterston, we will refer to her as Agent Waterston.

him on the day of the transaction. Agent Waterston acknowledged that when she watched the video recording of the transaction, she could not identify the Appellant because she "did not know who he was." Agent Waterston said that she was able to observe the CI only while he was in her sight. She explained that the agents did not have a "live feed" to monitor the transaction.

Lela Jackson testified that she was a special agent forensic scientist with the TBI crime laboratory. She testified without objection as an expert in forensic chemistry. Agent Jackson said that after testing and weighing, she determined that the substance the CI purchased was 55.39 grams of methamphetamine.

The jury found the Appellant guilty on count one of the sale of 26 grams or more of methamphetamine, on count two of the delivery of 26 grams or more of methamphetamine, on count three of the possession of 26 grams or more of methamphetamine with the intent to sell; and on count four of the possession of 26 grams or more of methamphetamine with the intent to deliver, all Class B felonies. At the sentencing hearing, the trial court noted that the charges were "alternative type charges" that "all had to do with one particular event" and should be served concurrently. The Appellant stipulated that he was a Range II, multiple offender. The trial court sentenced the Appellant as a Range II, multiple offender to concurrent sentences of eighteen years with release eligibility after serving thirty-five percent of the sentence in confinement. Thereafter, the trial court filed amended judgments reflecting a merger of counts one and three and a merger of counts two and four.

## II.  Analysis

### A.  Agent Eaton's Testimony

On appeal, the Appellant contends that the trial court erred in allowing Agent Eaton to narrate the video of the drug purchase in violation of Tennessee Rule of Evidence 602. Rule 602 is "[a]lso called the 'first-hand knowledge rule,' [and essentially] provides that a witness is not competent to testify unless he perceived the facts through one or more of the five senses." State v. Boling, 840 S.W.2d 944, 949 (Tenn. Crim. App. 1992).

Initially, we note that the Appellant contends that he "made a pre-trial motion in limine regarding whether Special Agent Eaton would be allowed to narrate the audio/video recording of the drug buy between the Appellant and the CI . . . ." The Appellant maintains that after hearing argument, "the trial court granted [the] Appellant's motion to limit officer testimony to explaining still frames taken from the CI video." The State responds that the Appellant cited to a portion of the pretrial transcript but did not cite to the motion in limine, noting that the written motion in limine was not included in the appellate record. The State contends that the Appellant has waived the issue by failing to include the written motion in the appellate record. The State further contends that the Appellant waived the issue by

failing to make a contemporaneous objection to Agent Eaton's testimony at trial and by failing to raise the issue in his motion for new trial. We agree with the State that the issue was waived.

The record reflects that prior to jury selection, the trial court announced that it wanted to address some motions in limine filed by the defense. The trial court stated that there was a motion to "prevent the narration or explanation of the video." The court asked the State about a conversation it had that morning with defense counsel. The State responded that it had redacted the video and that it wanted to emphasize "three or four important matters" with "still frame photographs." The State said that it had provided the photographs to defense counsel and that defense counsel had no objection to Agent Eaton explaining his opinion of what the photographs showed. Defense counsel agreed that she had no objection to Agent Eaton's explanation of the photographs as long as he did not "explain[] or go[] through the video." The trial court said that it was "granting the motion as to what has been explained to the court. Certain things will not be [al]luded to, what is happening during the video. But there are some still frames from the video that will be used and are agreed to by the [Appellant]." Clearly, the Appellant acquiesced to Agent Eaton's testimony regarding the photographs, thereby waiving any issue related to Agent Eaton's testimony regarding the photographs. See Tenn. R. App. P. 36(a) (providing that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error").

During Agent Eaton's testimony, he was shown photographs which were taken from the video, and he described what each photograph showed. As we have noted, the Appellant did not object to Agent Eaton's explanations of the photographs. Regarding the video, the Appellant contends on appeal that during his trial testimony, Agent Eaton "commented several times on the actual video." The Appellant failed to provide citations to the record to support this claim. Generally, "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b); see also Tenn. R. App. P. 27(a)(7). Regardless, our review reveals that the only question the State asked about the video was, "And about midway through the DVD we hear some beating and banging. In review, was that significant to you?" Agent Eaton responded, "Yeah, he was breaking up the rock." Defense counsel objected to the question and answer, and the trial court sustained the objection.

Our review of the record reveals that the trial court granted the Appellant's pretrial motion in limine, ruling that Agent Eaton was not allowed to narrate the video. Moreover, the record reveals that the Appellant made only one contemporaneous objection to Agent Eaton's trial testimony, namely when the agent described the banging noises, and the trial court sustained the Appellant's objection. Accordingly, we can discern no adverse ruling

from which the Appellant can appeal. The Appellant has not provided us with citations to any violations of the trial court's rulings. We caution that "[a]lthough we strive to conduct a comprehensive review of the record in each case we review, it is not the duty of this court to scour the record in search of the facts supporting a defendant's argument." State v. Sharod Winford Moore, No. M2015-00663-CCA-R3-CD, 2016 WL 3610438, at *8 (Tenn. Crim. App. at Nashville, June 28, 2016). The Appellant is not entitled to relief on this issue.

## B. Merger

We note that at the motion for new trial, defense counsel told the trial court that the Appellant "was convicted by various counts. Those counts would merge together and, Your Honor, in sentencing, of course, said they merged together." Defense counsel noted that when the Appellant arrived at the Tennessee Department of Correction, his convictions had not been merged and that he had four separate convictions. The trial court and the State inquired into the specific relief defense counsel was requesting, noting that the Appellant's sentences had been ordered to be served concurrently. Defense counsel stated that "what we need to send is to say that the merge together rather than just concurrent. Because the offenses were all the same type offense and they merged is what happened, rather than just concurrent." The trial court agreed to "make whatever order that here is to show merging, if that's necessary" and ordered the State to prepare the necessary paperwork. Thereafter, the trial court entered judgments of conviction merging count one, sale of 26 grams or more of methamphetamine, with count three, possession of 26 grams or more of methamphetamine with the intent to sell, and merging count two, delivery of 26 grams or more of methamphetamine, with count four, possession of 26 grams or more of methamphetamine with the intent to deliver.

The merger of the convictions was not raised on appeal. However, we conclude that having multiple convictions based upon the same criminal activity violates the principles of double jeopardy. Notably, "[t]he evidence to support all four convictions is the same. All of the offenses occurred at the same time, during the same drug transaction, and involved the same drugs." State v. Ziberia Marico Carero, No. E2015-00140-CCA-R3-CD, 2015 WL 9412836, at *7 (Tenn. Crim. App. at Knoxville, Dec. 22, 2015). Although the trial court merged count one with count three and count two with count four, the trial court should have merged all of the Appellant's convictions into a single conviction, namely the conviction of the sale of 26 grams or more of methamphetamine. Id. Therefore, the case must be remanded to the trial court for entry of corrected judgments. We note that because the trial court ordered the sentences to be served concurrently, the merger does not affect the Appellant's effective sentence. Id.

### III.  Conclusion

We conclude that the judgments of conviction must be remanded for entry of corrected judgments to reflect the merger of the convictions.  The judgments of the trial court are affirmed in all other respects.

_____
NORMA MCGEE OGLE, JUDGE